CLERKS OFFICE U.S. DIST. COURT
AT CHARLOTTESVILLE, VA
FILED
February 23, 2026
LAURA A. AUSTIN, CLERK
BY: s/ D. AUDIA
DEPUTY CLERK

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
## HARRISONBURG DIVISION

| | | |
|---|---|---|
| United States Justice Foundation, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| Response Unlimited, Inc. | ) | Civil Action No. 5:25-cv-00074 |
| | ) | |
| and | ) | |
| | ) | |
| Philip Zodhiates, | ) | |
| | ) | |
| Defendants. | ) | |

## <u>MEMORANDUM OPINION</u>

Many charitable and nonprofit organizations employ "list brokers" to expand their donor base and contribute to fundraising efforts. These broker entities help facilitate the purchase, sale, and rental of "donor list" contact information among charities and other organizations. To protect charities and donors from fraud and deceptive practices, states maintain laws that regulate this donor list exchange as well as other forms of charitable solicitation. United States Justice Foundation ("USJF"), a non-profit organization, and Response Unlimited, Inc. ("RU"), a list broker, entered into an agreement under which USJF reimbursed RU in exchange for RU's donor list rental and copywriting services. For over a decade, RU worked as an independent contractor for USJF. But the business relationship soured when USJF sent a letter accusing RU of violating state fundraising laws and seeking to terminate the agreement. Several years later, RU sued USJF in state court. The state court eventually ordered the parties to submit to mediation and arbitration, pursuant to an

arbitration clause in their agreement.  Now, USJF sues RU and its founder in federal court for conversion, unjust enrichment, and violation of state fundraising laws.

This matter is before the court on Defendants RU and Philip Zodhiates's motion to dismiss Plaintiff USJF's complaint.  (Dkt. 7.)  Defendants contend that Virginia's statute of limitations and *res judicata* doctrine bar USJF's case in its entirety.  (*Id.* at 1.)  But this is not one of "the relatively rare circumstances where facts sufficient to rule on an affirmative defense are alleged in the complaint."  *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007). Because the applicability of these affirmative defenses is not clear from the face of USJF's complaint, the court will deny Defendants' motion to dismiss.  Defendants may raise these defenses at a later stage.

## I.     Background

### A.  Factual History[1]

USJF is a nonprofit charitable corporation with a mission of litigating and educating the public on "significant legal issues confronting America."  (Compl. (Dkt. 1) ¶ 2.)  USJF and RU formed a business relationship in late 2005.  (*Id.* ¶ 19.)  RU is a "list broker," or "an entity that buys, sells, and rents direct-marketing prospect lists on behalf of charities and other organizations."  (*Id.* ¶ 3.)  The parties agreed that RU would rent to USJF mailing lists owned by other entities as part of USJF's donor acquisition efforts.  (*Id.* ¶ 19; Dkt. 1-2 at 1.)  They also agreed that RU would rent out mailing lists "generated on behalf of [USJF]" to other entities and owners of mailing lists.  (*Id.* ¶ 19; Dkt. 1-2 at 4-5.)

---

[1] The facts in this section, except where otherwise noted, are taken from RU's complaint and the attached exhibits.  The court accepts the facts alleged in the complaint and supporting exhibits as true when resolving the motion to dismiss.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165–66 (4th Cir. 2016).

The terms of USJF and RU's agreement were memorialized in a List Brokerage Agreement ("the Agreement"), which was neither signed nor dated by either party. (Compl. ¶ 20; *see* Dkt. 1-2.) To compensate RU for their mailing list rental services, USJF agreed to pay RU a rental fee of $7 per thousand names from mailing lists owned by other entities. (Dkt. 1-2 at 1; Compl. ¶ 22.) Additionally, when RU rented USJF's list to others on behalf of USJF, USJF agreed to pay RU a commission equal to 65 percent of "the gross rental fee less any customary running charges." (Dkt. 1-2 at 5; Compl. ¶ 23.) The Agreement declared that the mailing lists "generated through the services of Response Unlimited . . . shall be the exclusive property of" USJF. (Dkt. 1-2 at 1.)

The Agreement also included a provision for copywriting and direct mail solicitation services. Specifically, the Agreement stated that, "[s]hould [USJF] desire to utilize copywriting services of" RU, USJF would pay them $2,800 "for each direct mail prospecting solicitation approved by [USJF] or its agent." (Dkt. 1-2 at 3.) For these services, RU would help USJF find third parties to provide "computer services (excluding data entry); printing; and letter shop services." (*Id.*; Compl. ¶ 24.)

The Agreement designated RU as "an independent contractor specifically secured to obtain mailing lists for [USJF's] donor acquisition program," and declared that RU was "not an agent, partner, or representative of [USJF]." (Compl. ¶ 25; Dkt. 1-2 at 3–4.) It further clarified that "neither Response Unlimited nor any of its employees will solicit funds or at any time [have] control or custody of funds collected by [USJF]," and that "[a]ll lists supplied for specific mailings will be executed only at the request and direction of [USJF]." (Dkt. 1-2 at 4.)

Finally, the Agreement includes an arbitration clause, which states that RU and USJF:

affirm their commitment to a biblical process of dispute resolution, which commands that they make every effort to live at peace and resolve disputes with each other in private or within the Christian church (see Matthew 18:15-20, I Corinthians 6:1-8). Therefore, **any controversy or claim arising out of or relating to this agreement, or breach thereof, shall be settled by biblically based mediation and, if necessary, legally binding arbitration** in accordance with the then-current Rules of Procedure for Christian Conciliation of the Institute for Christian Conciliation. Response Unlimited and U.S. JUSTICE FOUNDATION agree that these methods shall be the **sole remedy** for any controversy or claim arising from or related to this Agreement, and **expressly waive their right to file a lawsuit in any civil court against one another for such disputes, except to enforce the provisions of this paragraph**.

(Dkt. 1-2 at 5–6 (emphasis added).)

In 2017, over ten years after USJF and RU began their business relationship, USJF discovered that RU had been conducting business in ways that USJF believed violated state campaign laws and exceeded the scope of the Agreement. (*Id.* ¶¶ 26–47.) First, USJF learned that Philip Zodhiates, RU's founder and principal, was convicted of international parental kidnapping and conspiracy to commit international parental kidnapping in 2016. (*Id.* ¶¶ 4, 26, 30.) After being sentenced to three years in federal prison, Zodhiates was incarcerated from December 2018 to April 2021. (*Id.* ¶ 4.) There are laws in Virginia and other states that prohibit an individual, or an organization for which that individual works, from soliciting donations for a charity if that individual was convicted of certain crimes. (*Id.* ¶ 17; Va. Code Ann. § 57-57(H)(1)).)

The same year, USJF also learned that RU had "prepared and mailed direct-mail packages to members of the public throughout the United States asking for individuals to donate" to USJF. (Compl. ¶¶ 27–28.) This was done without USJF's knowledge or approval. (*Id.* ¶ 28.) Because RU prepared these materials for solicitations, USJF argues that RU fit the

Virginia statutory definitions of "professional fundraising counsel" and "professional solicitor." (*Id.* ¶¶ 10–15, 29, 31–34 (citing Va. Code Ann. §§ 57-48, 57-54, 57-61).) Thus, USJF asserts, RU was bound by and did not adhere to the accompanying regulatory requirements of (1) registering the RU-USJF relationship with the Virginia Commissioner of Agriculture and Consumer Services, and (2) disclosing the written RU-USJF agreement to the state with a provision authorizing direct-mail services. (*Id.*) Moreover, USJF claims that RU violated similar charitable solicitation regulations in other states that required RU to register its relationship with USJF and include certain mandatory contractual provisions in the RU-USJF agreement. (*Id.* ¶¶ 35–36.)

Once USJF discovered RU's alleged violation of state laws and Zodhiates's criminal conviction, USJF terminated the business relationship "in all respects" through a letter dated December 6, 2017. (*Id.* ¶ 39; Dkt. 1-3 at 2.) The letter is addressed to Zodhiates and signed by USJF's Executive Director, James Lacy, who had, at the time, recently assumed the Executive Director position. (Dkt. 1-3 at 2–3.) In the letter, Lacy explained that it had "come to [his] attention in the last week and since [he had] just started his role as ED" that, according to USJF's attorney, RU was not duly registered with state authorities. (*Id.*) He also cited Zodhiates's conviction and the lack of success of the fundraising program as reasons for terminating the relationship "for cause." (*Id.*)

At the end of his letter, Lacy requested that RU "return all data, lists, and other assets of USJF in [its] possession immediately." (*Id.* at 3; Compl. ¶ 40.) But RU has "repeatedly refused" to return such items, including USJF's donor lists. (Compl. ¶ 41.) Since USJF sent the termination letter on December 6, 2017, RU has received at least $125,000 from renting

out USJF's donor list.  (*Id.* ¶¶ 43–44.)  RU has not shared any of these proceeds with USJF.
(*Id.* ¶ 44.)  Additionally, as of July 2024, RU was still marketing USJF's donor lists on its website
after the termination of their business relationship and without USJF's consent.  (*Id.* ¶ 42; *see*
Dkt. 1-4.)  USJF continues to demand the return of its donor lists.  (Compl. ¶ 45.)

In December of 2018, RU hired a collections agency to seek more than $600,000 from
USJF.  (*Id.* ¶ 46.)  RU argues that USJF owes this amount as reimbursement for RU's previous
performance of professional fundraising services.  (*Id.*)  USJF, on the other hand, contends
that RU seeks collection for services that "were neither contracted for nor requested or
approved" by USJF.  (*Id.* ¶ 47.)

In December of 2022, RU filed a complaint in Augusta County Circuit Court and
sought to compel arbitration with USJF.[2]  (Dkt. 7-4 at 5; *see* Dkts. 7-1, 7-3.)  In its state-court
filings, RU asserted that they initiated the state-court suit after unsuccessfully attempting to
initiate arbitration with USJF.  (Dkt. 7-4 at 5.)  The parties submitted briefs on the motion to
compel, in which they disputed the existence of a written contract between USJF and RU,
(Dkt. 7-3 at 4–12; Dkt. 7-4 at 7–8), the inclusion and enforceability of the written agreement's
arbitration clause, (Dkt. 7-3 at 7–8; Dkt. 7-4 at 8–9), and whether RU failed to meet a
"condition precedent" to arbitration, (Dkt. 7-3 at 12–15; Dkt. 7-4 at 9–11).  On March 7, 2023,
the court held a hearing on the motion.  (*See* Dkt. 7-1 at 1.)  Several months later, on June 6,
2023, the court found that "the Plaintiff has carried its burden of proof to establish the

---

[2] The following facts about the prior state-court proceeding come from documents that Defendants attach to their motion
to dismiss.  (*See* Dkts. 7-1, 7-3, 7-4.)  Although these facts are not included in USJF's complaint or attachments, this court
may consider these filings under the public records exception without converting this motion to one for summary
judgment.  *See Walker v. Kelly*, 589 F.3d 127, 139 (4th Cir. 2009).  The court provides more detailed analysis as to why this
exception applies in Part II of this opinion.

existence of a written contract between the parties, and of an arbitration clause therein containing the parties' agreement to be bound by arbitration in the event of any disputes over the contract." (*Id.* at 1.) The court also required the parties, "pursuant to the contract established at the hearing," to submit to mediation, then to legally binding arbitration if no agreement is reached at mediation. (*Id.* at 1–2.) The court reached this decision based on the parties' briefs and evidence "taken *ore tenus* by counsel" at the hearing. (*Id.*) The order concluded by stating, "[t]here appearing to be nothing further to do in this matter," the clerk should "strike the case from the docket of active cases." (*Id.* at 2.)

### B. Procedural History

On July 21, 2025, USJF filed a complaint against RU and Zodhiates asking this court for declaratory relief, injunctive relief, and damages. (Dkt. 1.) The complaint alleges four causes of action against both Defendants: "declaratory judgment" (Count I), conversion (Count II), unjust enrichment (Count III), and violation of state fundraising laws (Count IV). (*Id.* ¶¶ 48–87.) Among other forms of relief, USJF asks this court to declare that the services RU purportedly performed on behalf of USJF are outside the scope of their List Agreement, issue an injunction prohibiting RU from continuing to use the USJF donor list and requiring RU to return it, and grant restitution, compensatory, and statutory damages to USJF. (*Id.* at 15–16.)

Defendants RU and Zodhiates moved to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) on August 18, 2025. (Defs.' Mot. to Dismiss (Dkt. 7) [hereinafter "MTD"].) They argue that the complaint is barred by both *res judicata* and the Virginia statute of limitations. (*Id.* at 1.) On September 2, USJF filed a response in opposition

to the motion to dismiss. (Dkt. 12.) The same day, USJF filed an amended response in opposition, which corrected a typographical error in the original opposition brief.[3] (Pl.'s Br. (Dkt. 13).) On September 8, Defendants filed a reply in support of their motion to dismiss. (Defs.' Reply (Dkt. 14).)

## II.    Standard of Review

A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a complaint. *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). It does not "resolve contests surrounding facts, the merits of a claim, or the applicability of defenses." *Tobey v. Jones*, 706 F.3d 379, 387 (4th Cir. 2013) (cleaned up); *see also Eastern Shore Markets, Inc. v. J.D. Assoc. Ltd. Partnership*, 213 F. 3d 175, 185 (4th Cir. 2000) ("A Rule 12(b)(6) motion, however, does not generally invite an analysis of potential defenses to the claims asserted in the complaint."). To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead sufficient factual allegations "to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* When reviewing a Rule 12(b)(6) motion to dismiss, the court must "accept as true all well-pleaded facts in a complaint and construe them in the light most favorable to the plaintiff." *Wikimedia Found. v. Nat'l Sec. Agency*, 857 F.3d 193, 208 (4th Cir. 2017). However, the court is

---

[3] Although the court did not grant USJF leave to amend, the court will consider USJF's amended response brief for purposes of resolving the motion to dismiss. The error in the initial filing was clearly typographical. *See Jones v. Blair Wellness Center, LLC*, No. CV ADC-21-2606, 2022 WL 1082645, at *3 n.5 (D. Md. Apr. 11, 2022) (disregarding "typographical errors" in defendant's brief). Furthermore, USJF promptly filed an amended brief on the same day, and Defendants do not raise any opposition to the amended filing. Nevertheless, the court warns USJF that, for future filings, where leave of court is required to file, leave must be secured *prior* to the filing of the proposed document.

not required to accept as true the legal conclusions set forth in a complaint. *See District 28, United Mine Workers of Am., Inc. v. Wellmore Coal Corp.*, 609 F.2d 1083, 1085 (4th Cir. 1979).

Generally, courts are limited to considering the facts alleged in the complaint and the "documents attached or incorporated into the complaint" when resolving a Rule 12(b)(6) motion. *Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597, 606 (4th Cir. 2015) (quoting *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 448 (4th Cir. 2011)). In most cases, consideration of any other extrinsic documents improperly converts the motion to one for summary judgment. *Id.* However, the Fourth Circuit recognizes several exceptions to this standard. *Id.* at 607.

First, courts may consider a document attached to a motion to dismiss without converting it to a motion for summary judgment when the document is "'integral to and explicitly relied on in the complaint,' and when 'the plaintiffs do not challenge [the document's] authenticity.'" *Id.* (quoting *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004)). Second, courts may "consider facts and documents subject to judicial notice" without converting the motion to one for summary judgment. *Id.* These judicially noticeable facts must be "generally known within the court's territorial jurisdiction," or able to be "accurately and readily determined from sources whose accuracy cannot reasonably be questioned." *Id.* (citing Fed. R. Evid. 201). The court must nevertheless construe all relevant facts from the public record, along with the well-pleaded allegations of the complaint, in a light most favorable to the plaintiff. *Id.* (citing *Clatterbuck v. City of Charlottesville*, 708 F.3d 549, 557 (4th Cir. 2013), *abrogated on other grounds by Reed v. Town of Gilbert*, 576 U.S. 155 (2015)).

Here, Defendants attach four new documents to their motion to dismiss: (1) the June 6, 2023, Augusta County Circuit Court order on RU's motion to compel arbitration in *Response Unlimited v. United States Justice Foundation*, Case No. CL21002605-00 (Augusta Cir. Ct. June 6, 2023), (Dkt. 7-1; *see* MTD at 3); (2) an email between representatives of two Christian arbitration firms regarding USJF and RU's case, (Dkt. 7-2; *see* MTD at 4–5); (3) USJF's brief in opposition to RU's motion to compel arbitration in the Augusta County Circuit Court case, (Dkt. 7-3; *see* MTD at 4, 7); and (4) RU's reply brief in support of the same motion to compel arbitration, (Dkt. 7-4; *see* MTD at 7).

Three of the four documents attached to the motion to dismiss are filings in the previous Augusta County Circuit Court lawsuit between USJF and RU. (*See* Dkts. 7-1, 7-3, 7-4.) These documents are all matters of public record that provide relevant facts for USJF's *res judicata* defense. *See Walker v. Kelly*, 589 F.3d 127, 139 (4th Cir. 2009) ("[A] federal court may consider matters of public record such as documents from prior state court proceedings in conjunction with a Rule 12(b)(6) motion."); *Colonial Penn Ins. Co. v. Coil*, 887 F.2d 1236, 1239 (4th Cir. 1989) ("We note that the most frequent use of judicial notice is in noticing the content of court records." (cleaned up)). Therefore, they are subject to judicial notice, and the court may consider them when resolving the motion to dismiss. However, Defendants' new factual allegations about the events surrounding the state-court proceeding that were not alleged in the complaint, including the parties' discussions about arbitration, may not be considered by the court at this time. *See Battlefield Builders, Inc. v. Swango*, 743 F.2d 1060, 1063 (4th Cir. 1984) ("On defendants' motion to dismiss, they cannot introduce new allegations or new facts.").

Additionally, the court may not consider Defendants' attachment depicting an email exchange between the arbitration firms without converting the motion to dismiss. (*See* Dkt. 7-2.)  This is not a matter of public record or subject to judicial notice, nor does USJF explicitly rely on this document in the complaint.  *See Zak*, 780 F.3d at 607.  Because neither of the two exceptions apply, incorporation of this document would improperly convert the motion to dismiss to a motion for summary judgment.  The court will only consider the other three attachments to the motion to dismiss. (*See* Dkts. 7-1, 7-3, 7-4.)

USJF attaches six new documents to its brief in opposition to the motion to dismiss. Courts have long held that a plaintiff cannot amend its complaint through new factual allegations or attachments in the response brief.  *See AMA Sys., LLC v. 3B Tech, Inc.*, No. 1:21-cv-01472, 2023 WL 7410854, at *5 (D. Md. Nov. 9, 2023) ("Plaintiffs may not amend the Second Amended Complaint by alleging new facts in, and attaching exhibits to, their Opposition."); *S. Walk at Broadlands Homeowner's Ass'n, Inc. v. OpenBand at Broadlands, LLC*, 713 F.3d 175, 184 (4th Cir. 2013) ("It is well-established that parties cannot amend their complaints through briefing or oral advocacy.").  None of the attached billing statements or transaction records are public records, nor were they incorporated by reference in the complaint.  *See Bailey v. Va. High School League, Inc.*, 488 F. App'x 714, 715–16 (4th Cir. 2012).  Therefore, the court declines to consider any of the six exhibits USJF appends to its brief in opposition, as well as any new factual allegations included in the brief, for purposes of resolving the motion to dismiss. (*See* Dkts. 13-1–13-6.)

# III.    Analysis

## A.  Statute of Limitations

In their motion to dismiss, Defendants raise a statute of limitations affirmative defense. (MTD at 8–9.)  Specifically, they argue that the court should apply the Virginia statute of limitations for "actions founded upon a contract," which imposes a five-year limitations period for most written contracts.  (*Id.* at 8 (quoting Va. Code Ann. § 8.01-246).)

The argument that a claim is time-barred by the applicable state statute of limitations is an affirmative defense that is "not usually an appropriate ground for dismissal" on a Rule 12(b)(6) motion.  *Gray v. Metts*, 203 F. Supp. 2d 426, 428 (D. Md. 2002); *see United States v. Kivanc*, 714 F.3d 782, 789 (4th Cir. 2013).  However, a defendant "can raise [a statute of limitations defense] in a motion to dismiss when the 'face of the complaint includes all necessary facts for the defense to prevail.'"  *Meridian Invs., Inc. v. Fed. Home Loan Mortg. Corp.*, 855 F.3d 573, 577 (4th Cir. 2017) (quoting *Leichling v. Honeywell Int'l, Inc.*, 842 F.3d 848, 850–51 (4th Cir. 2016)).  "'A complaint showing that the statute of limitations has run on the claim is the most common situation in which [an] affirmative defense appears on the face of the pleading,' rendering dismissal appropriate."  *Brooks v. City of Winston-Salem, N.C.*, 85 F.3d 178, 181 (4th Cir. 1996) (quoting 5A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1357 (1990)).  The defendant has the burden of establishing the statute of limitations affirmative defense.  *Goodman*, 494 F.3d at 464.

The court must begin its analysis by determining which state's statute of limitations applies to this case.  Under the *Erie* doctrine, a federal district court sitting in diversity, as here, must apply the choice-of-law provisions of the forum state, Virginia.  *See Klaxon Co. v. Stentor*

*Elec. Mfg. Co., Inc.*, 313 U.S. 487, 496–97 (1941); *Erie R. Co. v. Tompkins*, 304 U.S. 64, 78, (1938).

In Virginia, statutes of limitations are procedural rules governed by the law of the forum state.

*See Barry v. Donnelly*, 781 F.2d 1040, 1042 n.3 (4th Cir. 1986).   Accordingly, Virginia law

determines "both the applicable statute of limitations for [USJF's] claims and the time at which

those claims accrued under that limitations period."   *L-3 Comm'ns Corp. v. Serco, Inc.*, 926 F.3d

85, 96 (4th Cir. 2019).

Defendants argue that the five-year Virginia statute of limitations for actions based on

a contract, Va. Code Ann. § 8.01-246(A), applies to all claims in this suit.[4]  (*See* MTD at 8–9.)

USJF, on the other hand, argues that a different statute of limitations provision applies to each

of its conversion, declaratory judgment, and unjust enrichment claims.  (*See* Pl.'s Br. at 7–12.)

In particular, USJF asserts that (1) § 8.01-243's five-year limitations period "for injury to

property" applies to its conversion claim, (2) § 8.01-246's five-year period for actions based in

contract applies to its declaratory judgment claim, and (3) § 8.01-246's three-year period for

claims of implied contract applies to its unjust enrichment claim.  (*See id.* at 7–12.)

1.   Violation of State Fundraising Laws

First, neither party clearly addresses the statute of limitations defense as to Count IV

of the complaint.  Count IV alleges that Defendants violated eight different state fundraising

laws.  (*See* Compl. ¶¶ 75–87.)  Defendants generally declare that, under the five-year statute of

---

[4] Defendants also note that the three-year limitations period for contracts "in writing and not signed by the party to be charged, or by his agent, or . . . any unwritten contract, express or implied" may apply to USJF's claims.  (MTD at 9 (quoting Va. Code Ann. § 8.01-246(A)(4)).)  However, neither party raises that Defendants' quoted statutory language was not effective before July 1, 2019, and thus did not apply when USJF allegedly terminated the Agreement via Lacy's letter. Instead, the three-year statute of limitations that was effective in 2017 only applied to "unwritten contract[s], express or implied," and did not address contracts that were written but unsigned.  *See* Va. Code Ann. § 8.01-246 (1977).  Given the lack of briefing and the fact that this three- vs. five-year distinction does not alter the court's "recurring injury" analysis in Section III.B.2, the court does not decide which, if any, of these provisions apply.

limitations for actions founded upon a contract, "this *case* is barred," but make no specific arguments as to the state fundraising law claims. (MTD at 8 (emphasis added).) At this stage, the court must focus its analysis on the face of the complaint. *Andrews v. Daw*, 201 F.3d 521, 524 n.1 (4th Cir. 2000). USJF's complaint does not provide a clear timeline for the alleged state fundraising law violations. Rather, USJF leaves the precise accrual dates open by generally alleging that RU "prepared and mailed direct-mail packages" and "acted as an unlicensed professional fundraising consultant." (Compl. ¶¶ 28, 80–81.) While Defendants broadly contend that "the alleged 'breach' by Defendants initially occurred no later than the end of 2017," they do not posit when, specifically, each of the state fundraising law claims accrued. (Defs.' Reply at 2.) Nor do they argue that all the alleged fundraising law violations occurred outside of the five-year limitation period, or that the 2017 termination of the Agreement foreclosed any USJF state fundraising law claims based on Defendants' conduct in future years. Thus, even if Defendants are correct that the five-year statute of limitations for contract-based claims applies, this court cannot conclude at this time that all potential state fundraising violations are clearly time-barred. The court will not grant the motion to dismiss Count IV on statute of limitations grounds.

2. <u>Conversion Claim</u>

The parties disagree about whether § 8.01-243, which governs injury to property claims, or § 8.01-246, which governs actions based in contract, applies to USJF's conversion claim. Both provisions impose a five-year limitations period, *see* Va. Code Ann. §§ 8.01-243(B), 8.01-246(A), but they have differing accrual dates, *see id.* § 8.01-230. For injury-to-property claims, a cause of action accrues "from the date the injury is sustained." *Id.* On the other hand, for

- 14 -

claims arising out of a contract, the cause of action accrues "when the breach of contract occurs . . . and not when the resulting damage is discovered." *Id.* Regardless of whether the court categorizes USJF's conversion claim as one for injury to property or one based on a contract, USJF's complaint does not explicitly state the initial date on which the claim accrued—*i.e.*, when USJF first sustained injury from RU's alleged misuse of the USJF donor lists or when RU first allegedly breached the Agreement by misusing the donor lists. (*See* Compl. ¶ 64 (generally alleging that RU "has wrongfully exercised and continues to wrongfully exercise authority over" USJF's donor lists).) However, the complaint *does* allege that RU had "act[ed] beyond the scope of" the Agreement some time before December 6, 2017. (*See* Compl. ¶¶ 27–28, 39; Dkt. 1-2 at 1.) Therefore, under § 8.01-230, even when drawing all reasonable inferences in favor of USJF and assuming the latest possible accrual date, the "breach" or "date of injury" may have occurred outside of the five-year limitations period.

Assuming *arguendo* that this 2017 accrual date applies under either statute of limitations, the conversion claim may not be time-barred if it alleges a "recurring" or "intermittent" injury rather than a "continuing" injury.[5] *See AV Auto., L.L.C. v. Bavely*, 918 S.E.2d 757, 769–70, 772 (Va. Ct. App. 2025). A claim or breach is "continuous" only if "the wrongful act is of a permanent nature and one that produces all the damage which can ever result from it." *Am. Physical Therapy Ass'n v. Fed'n of State Boards of Physical Therapy*, 628 S.E.2d 928, 929 (Va. 2006)

---

[5] This "continuing-violation doctrine" applies to both contract and tort claims. *See, e.g., Fluor Fed. Sols., LLC v. PAE Applied Techs., LLC*, 728 F. App'x 200, 202–03 (4th Cir. 2018) (per curiam) (applying the doctrine to a breach-of-contract case controlled by § 8.01-246); *Forest Lakes Cmty. Ass'n, Inc. v. United Land Corp. of Am.*, 795 S.E.2d 875, 881 (Va. 2017) (applying the doctrine to a trespass tort claim controlled by § 8.01-243). Therefore, regardless of whether § 8.01-246 or § 8.01-243 applies to USJF's conversion claim, the court will need to determine whether the breach or injury is continuous or intermittent. *See Kancor Americas, Inc. v. ATC Ingredients, Inc.*, No. 15-cv-00589, 2016 WL 740061, at *5 (E.D. Va. Feb. 25, 2016) ("Defendant argues that under the continuing breach theory, regardless of which statute of limitation applies, either Virginia Code § 8.01-246(4)'s three-year statute of limitations for breach of any unwritten contract, express or implied, or Virginia Code § 8.01-243(B)'s five-year statute of limitations for conversion, Plaintiffs' claims are time-barred . . . .").

(quoting *Hampton Roads Sanitation Dist. v. McDonnell*, 360 S.E.2d 841, 843 (Va. 1987)) (cleaned up). In such cases, "the entire damages must be recovered in one action, and the statute of limitations begins to run from the date of the wrongful act." *Id.* (cleaned up). A single continuous injury most often involves an injury of a "permanent character, resulting from a permanent structure accrued when the injury was first sustained, even though the injury constantly and regularly recurs over time." *Forest Lakes Cmty. Ass'n, Inc. v. United Land Corp. of Am.*, 795 S.E.2d 875, 882 (Va. 2017) (citations omitted) (cleaned up). However, if the wrongful acts constitute a "series of 'repeated actions' causing *temporary* injuries to property," the limitations period renews with each repeated action. *Id.* at 883.

To grant Defendants' motion to dismiss the conversion claim as time-barred, the court would need to find that, as a matter of law, RU's alleged ongoing use of the donor lists constitutes a single continuing breach or injury. At this early stage, the court is unable to do so. At least part of USJF's argument relies on the "Transaction Records," (Pl.'s Br. at 9 (citing Dkts. 13-5, 13-6)), or evidence not incorporated into the complaint, which the court may not consider when resolving this motion to dismiss. Additionally, the precise nature and timing of RU's alleged breaches or exertions of dominion over USJF's property, and thus whether they were continuous or intermittent, are not clear from the face of the complaint. *See Goodman*, 494 F.3d at 466 (holding that a plaintiff need not "plead affirmatively in his complaint matters that might be responsive to affirmative defenses even before the affirmative defenses are raised" "except, perhaps, in the unusual case where a claim is filed *clearly* beyond the applicable limitations period"). The court needs more factual development to properly decide this issue. *See Robinson v. Nordquist*, 830 S.E.2d 36, 43 (Va. 2019) (declining to rule as a matter

of law whether the wrongful acts were continuous "[b]ecause the allegations in the amended complaint do not establish that this action is time barred"); *Virginia Hot Springs Co. v. McCray*, 56 S.E. 216, 220–22 (Va. 1907) (remanding the case for a new trial for the jury to determine the "permanent character" of the alleged injury and thus whether the statute of limitations should only run from the initial injury); *Bavely*, 918 S.E.2d at 772–73 (noting that courts often do not "decide as a matter of law whether a tort or breach of duty is continuous or recurring" because "[t]he relevant facts are often disputed," and affirming district court's decision to allow the jury to decide the issue).

Even if Defendants had shown that, based on the facts in and incorporated into the complaint, the injury was continuous and accrued outside of the limitations period, the court still would not be able to determine the applicability of the Virginia Code § 8.01-299(D) tolling provision or the doctrine of equitable estoppel. USJF's arguments and Defendants' rebuttals rely on many facts not included on the face of the complaint or its incorporated attachments. (*See* Pl.'s Br. at 10–11 (citing Dkts. 13-1–13-5); Defs.' Reply at 8–9.) Therefore, the court cannot decide the issue based on the plaintiff's complaint. *See Tucker v. Princeton Cmty. Hosp. Ass'n, Inc.*, No. 1:19-cv-00227, 2020 WL 5831986, at *6–7 (S.D.W. Va. Sept. 30, 2020) ("There may well be a statute of limitations problem with plaintiff's complaint. However, because the facts in support of such a defense do not appear plainly on the face of the complaint, the court cannot resolve it at this juncture."); *Beaumont v. Walter Scotty Branch*, No. 2:23-cv-03546, 2023 WL 7075101, at *6 (D.S.C. Oct. 26, 2023) ("To rule in defendants' favor at the motion to dismiss stage, this court would have to conclude that none of the tolling doctrines apply as a matter of law. Further factual development is needed for the court to be able to rule as much

. . . .").  Accordingly, at this time, the court will not dismiss the conversion count as barred by the statute of limitations.

### 3. Declaratory Judgment

The parties agree that Virginia's five-year statute of limitations for actions founded upon a contract applies to Count I, USJF's "declaratory judgment claim."  (*See* Pl.'s Br. at 7; MTD at 8.)  At the outset, the court notes that the Declaratory Judgment Act does not create an independent cause of action; rather, declaratory judgment is a type of remedy.  *See CGM, LLC v. BellSouth Telecommunications, Inc.*, 664 F.3d 46, 55 (4th Cir. 2011) ("[The Declaratory Judgment Act] is remedial only and neither extends federal courts' jurisdiction nor creates any substantive rights.").

In Virginia, "the applicability of the statute of limitations is governed by the object of the litigation and the substance of the complaint, not the form in which the litigation is filed." *Kappa Sigma Fraternity, Inc. v. Kappa Sigma Fraternity*, 587 S.E.2d 701, 707 (Va. 2003). Furthermore, a "declaratory judgment" request does not "permit a complainant to use the declaratory judgment statute as a vehicle to circumvent the statute of limitations applicable to the substance of a complaint." *Id.* (citing *Bd. of Supervisors v. Thompson Assocs.*, 393 S.E.2d 201, 204 (Va. 1990)).  Because USJF's "declaratory judgment claim" specifically asks this court to ascertain whether "the professional fundraising consultant services purportedly performed by [RU] on behalf of [USJF] are *outside the scope of the List Agreement*," (Compl. ¶ 50 (emphasis added)), the court agrees that its allegations appear to be "founded upon a contract," Va. Code Ann. § 8.01-246(A).  The five-year limitations period applies, and the declaratory judgment request, to the extent that it is based on a breach of contract claim, accrued when "the breach

- 18 -

of contract occur[red]." *Id.* § 8.01-230; *Kappa Sigma Fraternity*, 587 S.E.2d at 708 ("If we consider the [plaintiff's declaratory relief] claim challenging the 1974 amendments as alleging breach of a contract . . . either claim is barred by [the former statute of limitations provision for breach of contract].").

USJF argues in its brief that their declaratory judgment claim did not accrue until RU issued an October 2024 billing statement. (Pl.'s Br. at 7.) But this October date and USJF's accompanying billing statement allegations do not appear on the face of the complaint, its attachments, or any documents incorporated therein. Thus, USJF alleges facts that the court may not consider for purposes of resolving this motion. *See Zak*, 780 F.3d at 606. Moreover, this claim accrued when the relevant *breach* first occurred, "not when the resulting damage [was] discovered." Va. Code Ann. § 8.01-230; *see Sage Ventures, LC v. Chatham Ridge Condo. Unit Owner's Ass'n*, No. 1167-22-2, 2024 WL 558821, at *4 (Va. Ct. App. Feb. 13, 2024) (rejecting appellant's claim that, under §§ 8.01-246 and 8.01-230, the breach of contract claim accrued on the date of appellant's demand letter, and holding that the accrual date was instead based on the date of "the contractual breach that precipitated [appellant's] demand"). Therefore, the limitations period began to run when RU allegedly performed professional fundraising consultant services and exceeded the terms of the Agreement for the first time. (Compl. ¶ 50.) In his 2017 letter, Lacy claims that RU had performed these "professional fundraising services," which suggests an initial accrual date of, at the latest, December 6, 2017. (Dkt. 1-3

at 2.)  This puts the accrual date squarely outside of the five-year limitations period for this claim.[6]

USJF also argues that a tolling exception applies to the declaratory judgment count, as it only asks for equitable relief.  (Pl.'s Br. at 8.)  Virginia Code § 8.01-230 declares that the limitation period accrues "when the breach of contract occurs . . . *except where the relief sought is solely equitable.*"  Va. Code Ann. § 8.01-230 (emphasis added).  The precise scope of § 8.01-230 tolling for equitable relief was recently raised as an apparent matter of first impression in the Virginia state courts.  *See Willems v. Batcheller*, 109 Va. Cir. 319, 2022 WL 18392967, at *7, *aff'd on reh'g*, 109 Va. Cir. 319A (2022), *aff'd in part, rev'd in part and remanded*, 890 S.E.2d 659 (Va. Ct. App. 2023).  The Virginia Court of Appeals held that the five-year statute of limitations for injury to property did not apply to the nuisance and trespass claims because appellants only sought equitable remedies—specifically, injunctive relief—for the claims.  *Willems v. Batcheller*, 890 S.E.2d 659, 670–71 (Va. Ct. App. 2023) ("Here, the appellants pled that no sufficient remedy existed at law and were therefore seeking equitable remedies based on their claims of trespass and nuisance regarding the bamboo.  Hence, by the plain terms of Code § 8.01-230, the right of action was not deemed to have accrued at the time the injury began and the five-year statute of limitations does not apply to their claims.").  The court reasoned that "simply time alone will not bar a party from bringing a request seeking equitable relief."  *Id.* at 671.  However, the court held that the doctrine of laches—which bars claims where "prejudice

---

[6] Even if the court were to define the relevant "breach" as occurring when RU billed USJF for unauthorized services, the complaint clearly alleges that RU "hired a collections agency to seek more than $600,000 in purported unpaid fees from [USJF] for professional fundraising counsel services" in "December 2018"—over five years before USJF filed this suit. (Compl. ¶ 46.)  Thus, even under USJF's asserted definition of breach, the initial claim accrued outside of the five-year limitations period.

accrues to a defendant occasioned by the plaintiff's failure to assert their rights"—may still be applicable to these equitable claims. *Id.*

Not all declaratory relief is equitable in nature. *See Carr v. Union Church of Hopewell*, 42 S.E.2d 840, 843 (Va. 1947) (noting that a declaratory judgment action may proceed on the equity or law side of the court); *Terrace View Prop. Owner's Ass'n, Inc. v. Jannah*, No. 2007-24-3, 2026 WL 271521, at *9 n.12 (Va. Ct. App. Feb. 3, 2026) (same); *Gulfstream Aerospace Corp. v. Mayacamas Corp.*, 485 U.S. 271, 284 (1988) ("[A]ctions for declaratory judgments [under the federal Declaratory Judgment Act] are neither legal nor equitable."); *see also Virginia State Conf. NAACP v. Cnty. Sch. Bd. of Shenandoah Cnty.*, No. 5:24-cv-00040, 2025 WL 1900992, at *4 (W.D. Va. June 5, 2025) (analyzing "whether the declaratory relief sought is really equitable or legal in nature" based on whether it is "an action brought by one who would have been a defendant at common law"). It is unclear from the complaint and attachments whether the declaratory relief that USJF seeks is "solely equitable," which may trigger a tolling exception. Defendants do not directly address this issue in their briefs, much less carry their burden of proving it is more likely than not that the statute of limitations bars this relief. Thus, the court will not dismiss the declaratory judgment count at this time.

4. Unjust Enrichment

Defendants' motion to dismiss the unjust enrichment claim as time-barred will be denied for many of the same reasons set forth in the conversion claim analysis. Regardless of whether the three-year limitations period for implied contracts (§ 8.01-246(A)(4)) or the five-year limitations period for written contracts (§ 8.01-246(A)(2)) applies, and regardless of the initial accrual date, the continuing violation doctrine issue is implicated for this claim. USJF

argues that "each unauthorized use of the donor list and profits generated from such use may be based on a different set of names from USJF's donor list, i.e., a different list," such that RU's ongoing use of the list puts its violations "well-within the three-year limitations period." (Pl.'s Br. at 11.)  USJF also maintains that the statute of limitations was tolled under § 8.01-229(D).[7]  (*Id.* at 11–12.)  Because both the continuing violation and tolling arguments rely on facts outside of the complaint and incorporated attachments, the court will deny the motion to dismiss the unjust enrichment claim as time-barred at this juncture.

Overall, the court will deny Defendants' motion to dismiss the case as barred by the statute of limitations because the complaint is facially insufficient to resolve this affirmative defense.  However, Defendants may raise the issue of timeliness again, once the record is more fully developed.

## B. *Res Judicata* Defense

As the parties asserting the doctrine of *res judicata*, Defendants have the burden of showing by a preponderance of the evidence that a claim or issue should be precluded by a prior judgment.  *D'Ambrosio v. Wolf*, 809 S.E.2d 625, 628 (Va. 2018).  Defendants contend that USJF's complaint is barred by *res judicata* because USJF could have brought its current claims as counterclaims in the parties' earlier Augusta County Circuit Court lawsuit.  (MTD at 5–8.)  The court will not dismiss on *res judicata* grounds, as it is not clear at this stage that Virginia

---

[7] In addition to raising the § 8.01-229(D) tolling provision, USJF also argues that this claim seeks "solely equitable" relief, such that the unjust enrichment claim should be tolled like its declaratory judgment claim.  (Pl.'s Br. at 12.)  However, USJF's complaint explicitly alleges that "Response Unlimited has been unjustly enriched in an amount to be proven at trial, but believed to exceed $125,000."  (Compl. ¶ 74.)  USJF also requests compensatory damages totaling $125,000 in its prayer for relief.  (Dkt. 1 at 16.)  Together, these allegations imply that USJF is *not* only seeking equitable relief for its unjust enrichment claim.

preclusion law completely bars USJF's claims. However, Defendants may raise the issue of *res judicata* in a later motion.

Under the doctrine of *res judicata*, "a final judgment on the merits bars further claims by parties or their privies based on the same cause of action." *Montana v. United States*, 440 U.S. 147, 153 (1979). Because *res judicata* is an affirmative defense, like the statute of limitations defense, it "may be raised under Rule 12(b)(6) 'only if it clearly appears on the face of the complaint.'" *Andrews*, 201 F.3d at 524 n.1 (quoting *Richmond, Fredericksburg & Potomac R. Co. v. Forst*, 4 F.3d 244, 250 (4th Cir. 1993)). However, as the court discussed above, "a court may take judicial notice of facts from a prior judicial proceeding when the res judicata defense raises no disputed issue of fact." *Id.* USJF did not dispute the factual accuracy of the Augusta County Circuit Court filings that Defendants attached to their motion to dismiss. Nor did it generally dispute the factual accuracy of the Augusta County Circuit Court's record for *Response Unlimited v. United States Justice Foundation*, Case No. CL21002605-00. Thus, the court may consider these three documents in its *res judicata* analysis.

Federal courts are required to give full faith and credit to valid state-court judgments. *In re Genesys Data Techs.*, 204 F.3d 124, 127 (4th Cir. 2000) (citing 28 U.S.C. § 1738). To determine the preclusive effect of a state-court judgment, a federal court must apply "the preclusion law of the State in which the judgment was rendered." *In re Heckert*, 272 F.3d 253, 257 (4th Cir. 2001) (quoting *Marrese v. Am. Acad. of Orthopaedic Surgeons*, 470 U.S. 373, 380 (1985); *see Bennett v. Garner*, 913 F.3d 436, 440 (4th Cir. 2019). Because a Virginia state court entered the 2023 order compelling arbitration, this court applies Virginia's principles of *res judicata*, which encompasses claim preclusion and issue preclusion. *See D'Ambrosio*, 809 S.E.2d

at 628.  Defendants do not limit their *res judicata* defense in their motion to dismiss to either

form of preclusion.  Therefore, the court will analyze the applicability of both issue and claim

preclusion.

Under Supreme Court of Virginia Rule 1:6, which governs *res judicata* in Virginia, a party

may not relitigate "the same cause of action or any part thereof which could have been litigated

in the previous action."  *Bennett*, 913 F.3d at 440 (quoting *D'Ambrosio*, 809 S.E.2d at 628).  In

other words, *res judicata* "operates to prevent a party from getting a 'second bite of the apple'

with respect to wrongs arising from a single dispute."  *Id.*  The elements of claim preclusion

are: "(1) a final judgment on the merits, (2) the same parties (or their privies) in both

proceedings, also expressed as identity of the parties, and (3) both causes of action arising out

of the same conduct, transaction, or occurrence."  *Lane v. Bayview Loan Servicing, LLC*, 831

S.E.2d 709, 714 (Va. 2019) (citing Va. Sup. Ct. R. 1:6(a)).  Issue preclusion, similarly, requires

Defendants to show that (1) "the parties [or their privies] to the two proceedings [are] the

same," (2) "the issue of fact sought to be litigated [was] actually litigated in the prior

proceeding"; (3) "the issue of fact [was] essential to the prior judgment"; and (4) "the prior

proceeding . . . resulted in a valid, and final judgment against the party against whom the

doctrine is sought to be applied."  *Id.* (first alteration in original).

USJF argues that Rule 1:6 is inapplicable because USJF did not actually make any claim

for relief in the prior state-court action.  (Pl.'s Br. at 4–5.)  Because counterclaims are

permissive in Virginia, USJF contends that it was not required to bring them in the state-court

proceeding; thus, USJF cannot be precluded from maintaining this federal-court action.  (*Id.*)

However, as USJF acknowledges, there is a "widely recognized exception" to the general rule

that *res judicata* does not preclude permissive counterclaims. *Brown v. Transurban USA, Inc.*, 144 F. Supp. 3d 809, 833 (E.D. Va. 2015). When the defendant in the prior action fails to interpose a counterclaim, preclusion applies if "[t]he relationship between the counterclaim and the plaintiff's claim [in the prior action] is such that [the] successful prosecution of the second action would nullify the initial judgment or would impair rights established in the initial action." *Id.* (alteration in original) (quoting Restatement (Second) of Judgments § 22(2)(b) (1980)).

Pursuant to the order compelling arbitration, the initial state-court action established the parties' right to arbitrate "disputes over the contract," based on the contractual arbitration clause. (Dkt. 7-1 at 1.) USJF argues that its claims for conversion, unjust enrichment, and violation of state fundraising laws "arise entirely outside of the purported contract to which the state court's arbitration order applies," implying that this right to arbitrate would not be impaired. (Pl.'s Br. at 5.) Defendants respond that the Restatement exception clearly applies to USJF's claims for declaratory judgment, conversion, and unjust enrichment. (Defs.' Reply at 8.) However, Defendants do not provide any further explanation as to why each of USJF's claims fall within the scope of this particular arbitration clause, such that Defendants' previously established right to arbitrate would be impaired. Nor do Defendants point to any case law or facts supporting that any one of the four USJF claims is arbitrable under Section 9 of the Agreement. Rather, they rely solely on conclusory statements that USJF is wrong in alleging its claims are "outside the scope" of the contract. (*Id.*)

Therefore, while USJF's declaratory judgment, unjust enrichment, conversion, and state fundraising law claims are generally related to the parties' business relationship,

Defendants fail to demonstrate by a preponderance of evidence that this particular arbitration clause covers USJF's claims. Said differently, Defendants do not carry their burden of showing it is more likely than not that their arbitration rights, as established by the state court, would be impaired and the claims are barred by *res judicata*. Accordingly, the court will deny the motion to dismiss USJF's claims on *res judicata* grounds. However, the Defendants may nevertheless ask the court to reconsider the *res judicata* defense or the arbitrability of USJF's claims upon a future motion to compel arbitration or motion for summary judgment.[8]

## C. Additional Unjust Enrichment and Conversion Defenses

Defendants argue for the first time in their reply brief that (1) USJF's unjust enrichment claim is barred by the state court's finding of an express contract, and (2) USJF's conversion claim is barred by Virginia's "source of duty rule." Generally, parties are not permitted to raise arguments for the first time in a reply brief. *See, e.g.*, *De Simone v. VSL Pharm.*, 36 F.4th 518, 531 (4th Cir. 2022); *United States v. Al-Hamdi*, 356 F.3d 564, 571 n.8 (4th Cir. 2004) (declining to consider an issue newly raised in reply brief). The court may, in its discretion, consider these new arguments under certain circumstances. *De Simone*, 36 F.4th at 531. However, "the primary reason for declining such consideration is where the opposing party is prejudiced in its ability to respond to the argument." *Touchcom, Inc. v. Bereskin & Parr*, 790 F. Supp. 2d 435, 446 (E.D. Va. 2011); *see Clawson v. FedEx Ground Package System, Inc.*, 451 F. Supp. 2d 731, 734 (D. Md. 2006).

---

[8] Under the Federal Arbitration Act, a court must, *upon motion by a party*, stay any proceeding that involves an issue subject to arbitration under a written arbitration agreement. 9 U.S.C. § 3; *see also Choice Hotels Int'l, Inc. v. BSR Tropicana Resort, Inc.*, 252 F.3d 707, 709 (4th Cir. 2001). This denial of Defendants' motion to dismiss does not necessarily preclude Defendants from moving to compel arbitration and stay federal court proceedings.

Defendants' first new argument—that the express contract prevents USJF from bringing an unjust enrichment claim—sounds in preclusion doctrine. (Defs.' Reply at 11.) However, the argument is markedly different than Defendants' *res judicata* defense as articulated in their motion to dismiss. First, the doctrines are not identical; Virginia law allows courts to dismiss unjust enrichment claims when the plaintiff simply "affirm[s] the [express] contract and consent[s] to be bound by its provisions," regardless of whether there is a prior court finding of an express contract or whether any other *res judicata* elements were met. *CGI Fed. Inc. v. FCi Fed., Inc.*, 814 S.E.2d 183, 191 (Va. 2018) (internal quotation marks omitted). Also, there are various arguments available to rebut an express contract defense that are not applicable to *res judicata*. *See, e.g., Student A v. Liberty Univ., Inc.*, 602 F. Supp. 3d 901, 912–13 (W.D. Va. 2022) (discussing plaintiff's arguments that she was merely pleading in the alternative and that the contract did not extend to govern certain topics). Because Defendants made this argument for the first time in their reply brief and USJF did not file a surreply, USJF did not have adequate opportunity to respond to the new defense.

Defendants' reply brief also raises an entirely new defense under Virginia's "source of duty" rule. (*See* Defs.' Reply at 9–11.) Even more starkly, this argument was not at all articulated in their motion to dismiss. Thus, there is a risk that USJF would be prejudiced by the court deciding this issue without providing them with an opportunity to respond. *See Carter v. Wells Fargo Bank, Nat'l Ass'n*, 677 F. Supp. 3d 379, 382 n.2 (W.D. Va. 2023); *cf. Touchcom, Inc.*, 790 F. Supp. 2d at 446 (exercising discretion to consider new allegations in a summary judgment reply brief because "the relevant briefing on this matter continued well

beyond the initial summary judgment motions, and both sides have been afforded—and have taken—every opportunity to fully develop their positions" on the allegations).

Accordingly, the court will not consider either of these new arguments.[9]  Defendants may, however, present them at a later stage when the issues are properly briefed and USJF has had the opportunity to respond.

## IV.    Conclusion

For the foregoing reasons, the court will **DENY** Defendants' motion to dismiss for failure to state a claim on which relief can be granted.  (Dkt. 7.)  Defendants may raise the statute of limitations and *res judicata* affirmative defenses once the record is more fully developed.

An appropriate Order will issue.

**ENTERED** this  23rd  day of February, 2026.

HON. JASMINE H. YOON
UNITED STATES DISTRICT JUDGE

---

[9] Additionally, the court will not consider Defendants' one-line argument that "Plaintiff's complaint alleges no basis for any claim whatsoever against Defendant Philip Zodhiates."  (MTD at 10; Defs.' Reply at 12.)  "[I]t is not the obligation of [a district court] to research and construct the legal arguments available to the parties.  To the contrary, perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are deemed waived."  *United States v. $121,675.00 in U.S. Currency*, No. 5:23-cv-00223, 2024 WL 577510, at *2 (E.D.N.C. Jan. 3, 2024) (quoting *McNeil v. District of Columbia*, 233 F. Supp. 3d 150, 157 n.11 (D.D.C. 2017)), *report and recommendation adopted in part by United States v. $121,675.00 in U.S. Currency*, 725 F. Supp. 3d 521 (E.D.N.C. 2024); *see also United States v. Johnson*, 122 F. Supp. 3d 272, 346 (M.D.N.C. 2015) ("The court need not, and will not, devise arguments or scour case law to support a party's legal conclusions.").